UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     DARIUSH JAHANIAN | ) | Case No. 08-10030-SSM |
| | ) | Chapter 7 |
|                    Debtor | ) | |
| | ) | |
| CHARLES BARRETT HAVER *et al.* | ) | |
| | ) | |
|                    Plaintiffs | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 10-1165 |
| | ) | |
| DARIUSH JAHANIAN | ) | |
| | ) | |
|                   Defendant | ) | |

**MEMORANDUM OPINION**

This is an action to determine the dischargeability of claims asserted by Charles Barrett Haver and Elaine Haver against the debtor, Dariush Jahanian, arising from two contracts between the Havers and Dar Designs, LLC—one for the purchase of custom Italian-manufactured kitchen cabinets and the second for installation of the cabinets and renovation of the Havers' kitchen.[1]  A trial was held on February 17 and 18, 2011, following which the court took the issues under advisement.  This opinion constitutes the court's findings of fact and

---

[1] The complaint also included two counts seeking denial of discharge based on false oaths or accounts in connection with the case.  As to one of those counts (Count 4), the plaintiffs conceded the defendant's motion for summary judgment; and the court, by separate memorandum opinion and order, granted summary judgment dismissing the other (Count 3).  *Haver v. Jahanian (In re Jahanian)*, 2011 WL 710477, 2011 Bankr. LEXIS 627 (Bankr. E.D. Va. Feb. 22, 2011).

conclusions of law asrequired by Rule 7052, Federal Rules of Bankruptcy Procedure and Rule 52(a), Federal Rules of Civil Procedure.

Background and Findings of Fact

Dariush Jahanian ("the debtor") filed a voluntary petition in this court on January 3, 2008, for adjustment of his debts under chapter 13 of the Bankruptcy Code. Although a plan was confirmed, the debtor was unable to carry out its terms (which required the sale of certain real estate by a specified date), and the case was converted to chapter 7 on February 19, 2010. On his schedules and statement of financial affairs, the debtor listed ownership interests in three business entities (Dar Real Estate, LLC, Dar International Furniture, and Dar Designs, LLC) but not until after the case was converted to chapter 7 did he list an ownership interest in Vienna Kitchen and Bath, Inc., which he co-owned with his son, Robin Jahanian. Dar International Furniture, Dar Designs, and Vienna Kitchen and Bath all operated out of the same commercial space. According to the debtor, Dar Designs was formed as an "import/export" business, while Vienna Kitchen and Bath provided kitchen and bath remodeling services.

In late 2007, Ms. Haver, who was interested in remodeling the kitchen of the house she and her husband owned in Falls Church, Virginia, found a yellow pages ad for Dar Designs. She met with the debtor, who drew up designs for a remodeled kitchen using Italian cabinets for which Dar Designs was a distributor. During her discussions with the debtor, she asked if he was a licensed contractor. He assured her that he was both a Class A licensed contractor and a licensed civil engineer. Ms. Haver testified that she understood the debtor to mean that he was personally licensed as a Class A contractor, while the debtor testified that he was referring to Vienna Kitchen and Bath, which did hold a Virginia Class A contractor's license. In any event,

2

Ms. Haver signed a contract with Dar Designs on March 3, 2008, which was limited to the purchase of the cabinets and a hood. The contract price was $24,000, of which $12,000 was paid at signing and $12,000 when the cabinets were delivered on August 7, 2008. Ms. Haver, apparently thinking that the debtor's price quote for the installation and renovation was high, explored having another contractor do the actual installation and related remodeling work. On June 27, 2008, the debtor emailed Ms. Haver that the cabinets had arrived from Italy, and he made a pitch for having Dar Designs do the installation:

> My light fixtures are ordered and manufactured with my own specification with solid one piece grinded [sic] aluminium [sic] and for my own projects. I don't know if you can find it any where else. I am waiting for my electrician to give an estimate to see if I could bring the price down. By Monday or Tuesday I will try to give you my best price. My installers are trained by me and have done my kitchens for years and they are high paid workers, I am sure you can find carpenters that will charge you very small amount to install your kitchen and I pray that they do a good job. These cabinets installation is very technical and sensitive and if they have not done it before they will not be able to do a good job.

Ms. Haver ultimately decided to have Dar Designs do the installation. She signed a second contract with Dar Designs on August 1, 2008, for installation of the floor tile, cabinets, and countertop. The contract price was $20,635, with $7,000 due at signing, $5,000 when the floor tile was installed, $4,000 when the cabinets were installed, $3,500 when the countertop was installed, and $1,130 when the work was completed.

The contract required the Havers to obtain the necessary building permits. When they did not do so, the debtor offered to obtain them as their agent, but Ms. Haver would not sign the affidavit the debtor said was necessary for that purpose because she did not understand what it was. In any event, work was begun without building permits having been obtained. According to the debtor, the workers were employees of Vienna Kitchen and Bath. After the old kitchen

was gutted and the floor tile and cabinets were installed, work essentially came to a standstill. The testimony is sharply conflicting as to the reason why. The Havers contend that the tile and cabinets were not properly installed and that the sink the debtor had recommended would not fit the countertop. The debtor contends that Ms. Haver insisted on numerous changes to the original design and would not make a final decision as to placement of the sink and the color of the countertop.

In any event, after Ms. Haver made a complaint to the Fairfax County Department of Public Works and Environmental Services, Frank Miller, a Fairfax County building inspector, inspected the project on April 13, 2009, and determined that the work was being done without permits. He did not, however, issue a stop work order. In order to complete the job, the debtor had Vienna Kitchen and Bath obtain the necessary permits. However, the impasse continued, with the Havers—who by this time had paid $12,000—refusing to pay the $4,000 that was due upon cabinet installation until what they regarded as defects were corrected, and the debtor declining to do any further work until the $4,000 was paid and a "final and unchangeable" decision was made by the Havers as to the cabinet placement, granite, wall tile, and lighting. The project remains incomplete even to this day, with no countertop, wall tiles, lighting fixtures, or appliances installed. The debtor's son, Robin Jahanian, testified that the work was 60% to 70% complete and would require no more than five days to finish.

<u>Conclusions of Law and Discussion</u>

I.

This court has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of

Virginia dated August 15, 1984. A determination of dischargeability is a core proceeding in which a final judgment or order may be entered by a bankruptcy judge. 28 U.S.C. § 157(b)(2)(I). Venue is proper in this district under 28 U.S.C. § 1409(a). The defendant has been properly served and has appeared generally.

## II.

Although a bankruptcy discharge of an individual debtor extends to most prepetition debts, certain debts are excluded from discharge. Among these are debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." § 523(a)(2)(A), Bankruptcy Code. The required elements of actual fraud under § 523(a)(2) are: "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 218 (4th Cir. 2007). The burden of proof is on the plaintiff, and the standard of proof is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed.2d 755 (1991).

## A.

With respect to the first of the two contracts, the evidence wholly fails to demonstrate even a breach, let alone fraud. There is no dispute that the cabinets Ms. Haver ordered and paid for were delivered. There is no evidence that the cabinets were not as described. The first contract, as noted, was solely for the sale and delivery of the cabinets and did not include installation or any other work that would have required a contractor's license or building permits. Thus, even if the debtor's statement with respect to having a Class A contractor's

license could reasonably be construed as a representation that he personally, rather than his company, was licensed, any such representation was irrelevant to the purchase of the cabinets even though Ms. Haver ultimately entered into the second contract for the actual kitchen renovation work. Accordingly, no basis exists for a determination that the debtor has any liability, let alone a nondischargeable liability, with respect to the $24,000 paid under the first contract.

B.

A much closer question is presented with respect to the second contract. Although the court cannot find that the debtor's statements with respect to having a Class A contractor's license could reasonably have been construed as a representation that he personally, rather than his company, was licensed, the plain fact is that the company with which Ms. Haver contracted and on whose behalf the debtor signed—Dar Designs, LLC—was not licensed as a contractor. That misstatement, assuming the other elements of actual fraud were met, would be sufficient to except any resulting liability from discharge. *See Pleasants v. Kendrick (In re Pleasants)*, 219 F.3d 372, 375 (4th Cir. 2000) (holding that even though homeowners' claim included nothing paid directly to debtor who misrepresented himself as architect, the amounts they paid to third parties to complete project when debtor defaulted were nondischargeable under § 523(a)(2)(A)).

It is true that Vienna Kitchen and Bath, Inc., did have a Class A license. But although "the same people" may have worked for both companies, the fact remains that the companies were separate legal entities. Because Ms. Haver had no contract with Vienna Kitchen and Bath, she could not, for example, have brought a claim against the Virginia Contractor Transaction

Recovery Fund to recover damages caused by "improper or dishonest conduct" in connection with the renovation work. Va. Code Ann. § 54.1-1118 *et seq.*

Although the evidence therefore amply supports a finding that the debtor made at least an implied representation that Dar Designs—the entity with which Ms. Haver contracted—held a Class A license, and although that representation was false, the question nevertheless remains whether the debtor intended to deceive Ms. Haver, whether she justifiably relied on the representation, and whether she was damaged as a result of her reliance. The debtor's testimony is that normally he would have used a Vienna Kitchen and Bath contract form, but that form was on the computer in his son's office, and instead he simply brought up the Dar Designs contract form that was on his own computer because Ms. Haver was anxious to get the contract signed. There is no evidence that from the debtor's perspective it particularly mattered which company was the contracting party or for that matter that he considered them as separate entities in his own mind. Having carefully considered the evidence, the court is simply unable to find, even by a preponderance of the evidence, that the debtor intended to deceive Ms. Haver. Because the evidence does not support a finding of intent to deceive, the court need not reach the remaining elements—in particular, whether, as the Havers contend, the installation of the tile and cabinets was defective or whether, as the debtor contends, the project came to a halt because Ms. Haver insisted on making changes to the original design and refused to pay the $4,000 due at cabinet installation.

The court is certainly sympathetic to the Havers' situation. Although no evidence was presented as to whether the cost to complete the renovation of the kitchen exceeds the remaining contract balance, there is no question that the failure to finish the project has left them with a

non-functional kitchen.  The court will assume, without deciding, that because Dar Designs was not licensed as a contractor, the Havers have a cause of action against Dar Designs for return of the entire $12,000 they paid for the incomplete work.  But that is a separate issue from whether the debtor, as owner of Dar Designs, was guilty of actual fraud with respect to the contract.  The court simply cannot find that he was.

A separate judgment will be entered consistent with this opinion determining that the debtor's liability to the plaintiffs is dischargeable and has been discharged.

Date: _____        _____
                                      Stephen S. Mitchell
Alexandria, Virginia                  United States Bankruptcy Judge


Copies to:

Ernest P. Francis, Esquire
Ernest P. Francis, Ltd.
1655 N. Fort Myer Drive, #700
Arlington, VA 22209
Counsel for the plaintiffs

Joseph Michael Langone, Esquire
Law Offices of Joseph M. Langone
11876 Sunrise Valley Dr. Suite 201-C
Reston, VA 20191
Counsel for the defendant